## SUPREME COURT.

### LAFAYETTE D. HOLSTEIN agt. DAN RICE.

Where *supplementary proceedings,* having been commenced and continued before a *county judge,* until an order was issued for the defendant to show cause why an attachment for *contempt* should not be issued against him, and failing to show cause, the attachment was issued and put into the hands of an officer for service, and before the service the county judge *went out of office,* having previously transferred these proceedings to his successor in office,

*Held,* that the proceedings were properly *continued* before the successor in office. An *order* of a *county judge,* dismissing proceedings on an attachment for *contempt* against the defendant in *supplementary proceedings,* is appealable to the general term.

*Albany General Term, May,* 1862.

HOGEBOOM, PECKHAM and MILLER, *Justices.*

APPEAL from order made by county judge of Albany county, in proceedings supplementary to execution. On the 11th of January, 1858, the plaintiff recovered a judgment in the supreme court, against the defendant, for $1,472.63, damages and costs. Execution having been issued thereon, and returned unsatisfied, the plaintiff, on the 7th of June, 1859, obtained an order for the defendant's examination, under section 292 of the Code. On the return day the defendant appeared, and the examination was commenced, and adjourned to a subsequent day. On the adjourned day the defendant did not appear, and an order was made on him to show cause why he should not be punished for a contempt. This order was personally served. At the time appointed, no cause was shown, and the proceedings were adjourned from time to time, on application of defendant's counsel. On the 20th of September, 1859, Judge ROBINSON issued an attachment for the arrest of the defendant. Unsuccessful efforts were made to serve the attachment. On the 30th December, 1859, Judge ROBINSON made an order transferring the proceedings to Judge WOLFORD, his successor in office, who took

office on the first of January, 1860. On the 20th of January, 1862, notice of such substitution was served on the defendant. On the 25th of January, 1862, Judge Wolford issued an attachment for the arrest of the defendant, on which the defendant was brought before him by the sheriff of New York, on the 11th of February, 1862, and the judge ordered interrogatories to be filed. On the 12th of February, 1862, such interrogatories were filed and served on defendant, and proceedings adjourned to February 17th, to enable him to answer. On the 17th of February, 1862, the parties appeared, and the defendant moved for his discharge upon the ground that Judge Wolford had no jurisdiction. On the 18th of February, 1862, Judge Wolford made an order discharging the defendant from custody, on the sole ground that the proceedings had terminated with Judge Robinson's term of office, and that he therefore had no jurisdiction. On the 3d of March, 1862, the plaintiff appealed from this order to the general term.

> Lyman Tremain, *for plaintiff, appellant.*
> Anson Bingham, *for defendant, respondent.*

By the court, Hogeboom, Justice. The plaintiff, having a judgment on which an execution against the defendant had been returned unsatisfied, applied, in 1859, to Judge Robinson, then county judge of Albany county, for an order, under section 292 of the Code, to examine the defendant in regard to his property. The order was granted, duly served, the defendant appeared, and the examination was in part had, and adjourned to a subsequent day. On such day the defendant did not appear, and an order was issued and duly served, to show cause why an attachment should not be issued against him. No cause being shown, an attachment against the defendant was issued by Judge Robinson, but failed of service on account of inability to find the defendant. Meanwhile, on the last of Decem-

ber, 1859, Judge ROBINSON's term of office expired, and he made an order transferring the unfinished business to his successor, Judge WOLFORD, whose term of office commenced on the first of January, 1860. In 1862, Judge WOLFORD, on the application of the plaintiff, issued a new attachment on the old proceedings, against the defendant, on which the latter was arrested and brought before him. Interrogatories were filed, and time given to the defendant to answer. On the day appointed for answering he appeared, and moved to dismiss the proceedings upon the ground that the proceedings before Judge ROBINSON terminated with his term of office, and were not and could not be legally continued before his successor ; that proceedings for contempt for disobedience of an order in supplementary proceedings, could be heard and the disobedience punished only by the judge issuing the original order, and were, in their nature, personal to that officer. The county judge dismissed the proceedings and discharged the defendant from arrest, holding that he had no lawful jurisdiction over him. From the order thus discharging the defendant, the plaintiff appeals to the general term.

1. I think the order is appealable, because it defeats the plaintiff of a substantial right. The object of the proceedings before Judges ROBINSON and WOLFORD was not simply to punish the defendant for a contempt of the judge's order, but to enforce the plaintiff's rights and collect his judgment. The attachment was issued at the instance of the plaintiff, and was a necessary proceeding to enable him to pursue the investigation before the judge. A contumacious refusal on the part of the defendant to answer before the judge, might be punished by the imposition of a fine fully vindicating the dignity of the tribunal for the contempt of its order or process, and fully indemnifying the prosecuting party for any pecuniary loss he had sustained thereby. (2 *R. S.*, *p.* 536 ; *People* agt. *Compton*, 1 *Duer*, 515, 532, 533 ; *Livingston* agt. *Swift*, *MS. opinion*, *third*

*district.*)   It is not necessary now to determine whether the fine could equal the plaintiff's. judgment, though I do not see why it could not, if satisfactory evidence was presented to the judge that the plaintiff had sustained that amount of loss by the contumacy of the defendant.

2. The considerations already referred to, show that the proceedings for the attachment of the defendant had a double object, to wit : 1. For the punishment of the defendant, and 2. For the indemnity of the plaintiff and the payment of his judgment.   They should not, therefore, except for imperative and insuperable objections, be permitted to fall through or fail of their object, by the accidental circumstance of the expiration of the term of office of the incumbent thereof.   The ends of justice require that the *continuity* of the proceedings should be preserved, if possible.   Now, the proceedings under section 292 and subsequent sections of the Code, are either in continuation of the ordinary proceedings·in the suit, and to be regarded as. a part thereof, as has been held in some cases, (*Dresser* agt. *Van Pelt*, 15 *How.*, 23 ;  *Bank of Genesee* agt. *Spencer*, 15 *How.*, 412,) or else they are special proceedings out of the ordinary course, but having the same general object in view, to wit, the collection of the judgment, as is held in several other cases, (*Davis* agt. *Turner*, 4 *How.*, 190 ;  *see ex parte Ransom*, 3 *Code Rep.*, 148 ;  *N. Y. Central R. R. Co.* agt. *Marvin*, 1 *Kern.*, 276 ;  *Howard's Code*, 2d ed., *p.* 2.)   If they come under the first head, then it would seem as if they were properly continued before the successor in office of the officer before whom the application was originally made.   And as the suit itself in the supreme court, during its progress, would not abate by the death or expiration of the term of office of the justice before whom it was pending, or if he was the sole judge of the court, like the chancellor, by the death or expiration of his term of office, so the proceedings under section 292, which are in the nature of a creditor's bill, to enforce the judgment, (*Sale* agt.

*Lawson*, 4 *Sanf. S. C. R.*, 718,) ought not to be permitted to abate by the unavoidable occurrence of an event like the expiration of the term of office of the judge before whom the proceedings were first instituted,—an event not possible to be always foreseen as likely to occur during the pendency of the proceedings, and one over which the parties can have no control.

The propriety of such a rule would seem to be manifest in regard to the ordinary proceedings before the judge; and if such an event occurred while the examination of the case was going on, or during an adjournment of the hearing made for the convenience of the parties, I should have very little doubt, if, as before assumed, these proceedings were to be regarded as simply successive steps in the orderly progress of the suit towards its final consummation, that the subsequent proceedings might be appropriately pursued before the successor in office; and I have already endeavored to show that the proceedings to examine into the causes of a disobedience to the order of the judge requiring the appearance or further examination of a party, are in an important sense a part of the orderly proceedings under this section of the statute, inasmuch as they have in view (beside the punishment of the offender) the collection of the plaintiff's debt.

3. If these proceedings, however, are to be regarded as *special* in their nature—*extraordinary* in their character—*peculiar* in their object, and not to be classed among the ordinary proceedings in the actions or the ordinary methods resorted to for the consummation of those proceedings of which the summons is the first step,—then the question arises, whether, in the nature of things, or from any provisions of law, we can determine whether or not they die with the officer before whom they are commenced, or may be continued before his successor.

This question must be determined, I think, by the construction to be given to section 39 (51) of art. 2, tit. 2 of

chap. 3 of part 3 of the Revised Statutes, (2 *R. S.*, *p.* 284.) This section provides that " in case of the death, sickness, resignation, removal from office, absence from the county of his residence, or other disability of any officer before whom any special proceedings authorized by any statute, may have been commenced, and where no express provision is made by law for the continuance of such proceedings, the same may be continued by the successor in office of such officer, or by any other officer residing in the same county, who might have originally instituted such proceedings," &c.

This provisiom being remedial in its nature, should be liberally construed to effectuate the object intended. That object apparently was to provide for the continuance of all judicial proceedings, except those in ordinary progress of an action—which would be continued of course—and those where special provision had already been made by statute. And I think it may, without violence to its language, be so construed as to embrace the present case. In a certain sense, " removal from office " may be said to embrace the displacement, departure or removal from office, consequent upon the expiration of the term of office of the incumbent, but more particularly, I think, the expiration of the term of office may be said to create a " *disability* of the officer before whom any special proceedings are instituted." If it be said that the term " disability " means a temporary one, or one applied to a particular cause or proceeding, I answer, it cannot mean that in the present case, because the language is, " removal from office " or " *other* disability," implying that removal from office and the permanent disqualification thereby induced, is one of the " disabilities " to which the statute refers. So also, it would not be a very latitudinarian construction (in order to promote the ends of justice) to read the words, " where no express provision is made by law for the continuance of such proceedings," by

Holstein agt. Rice.

prefacing them with the words " in cases," and then they would plainly embrace the present proceeding.

It is said this section is inapplicable to the case in hand, because the statute is confined to " special proceedings," and this is not a special proceeding under the definition of the Code. I have already referred to several cases which hold this is a special proceeding within the definition of the Code; but I think it sufficient to say, that the term so designated in the Revised Statutes was employed before the enactment of the Code, and was evidently intended to designate all those which could not with propriety be classed under the *ordinary* proceedings in the action. In such a sense they are properly designated as *special*—that is, out of the ordinary course.

4. It is said that the power to punish for a contempt is *personal* to the judge or tribunal whose dignity or authority has been treated with disrespect; and *Shepard* agt. *Dean*, (13 *How.*, 174,) and *Wickes* agt. *Dresser*, (14 *How.*, 465, 470,) are cited in support of this position.

As to the first case, it must be remarked that *this* question was not before the court. The question *there* was, whether the *judge*, whose order was disobeyed, or the *court* of which he was a member, was the proper tribunal to enforce the proceedings for a contempt, and it was held that it belonged to the former. *Here*, the question is, whether the *successor* of the judge who has gone out of office, is in judgment of law the *officer or tribunal* before whom the proceedings were instituted. If he is not, the party is not punishable at all. Besides, Judge DALY's decision in *Shepard* agt. *Dean*, is directly opposed to that of Judge CLERKE in *Wickes* agt. *Dresser*, (13 *How.*, 331,) who holds that the *court* has the *inherent* power, in a general sense, of punishing as a contempt disobedience to orders made by *judges out of court;* and that it is a power essential to the efficacious existence of a judicial tribunal; and that the power has not been taken away from the court by

any provisions of the Code relating to *supplementary proceedings;* and that, on the contrary, the Code, in the sections in reference to those proceedings, plainly recognizes such power.

The case of *Wickes* agt. *Dresser*, (14 *How.*, 465,) only decides that the application to punish for a contempt under supplementary proceedings, must be made to the *judge* whose order has been disobeyed, and not to the *court*, (in which respect it is directly contradicted by the case last cited,) but *decides nothing as to the continuity* of the proceedings before his successor in office, or the *legal identity* of the two. If, therefore, they are in legal effect the same person, and if the proceedings for contempt are but a mode of obtaining satisfaction of the judgment, then the last named objection to this process is unsupported by sound reason.

I think the order appealed from should be reversed, with ten dollars costs.